UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DENNIS S. LINDLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:10-1108 |
| | ) Judge Sharp |
| AMERICAN HOME MORTGAGE | ) |
| SERVICING, INC. (a Delaware | ) |
| Corporation, | ) |

## MEMORANDUM

This action for libel and violation of the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-104(a) and (b)(27), arose after his mortgage company allegedly falsely reported "on divers days beginning in May, 2010" that "Plaintiff had failed to timely pay his mortgage payment due on April 1, 2010, despite that [sic] Defendant having provided the Plaintiff with a confirmation for the payment when it was made." (Docket No. 1, Complaint ¶ 16). Plaintiff claims this error has caused him financial harm, including making him ineligible to refinance other property at a lower rate.

Defendant Homeward Residential, Inc. f/k/a American Home Mortgage Servicing, Inc. (Defendant or "AHMSI") has filed a Motion for Summary Judgment (Docket No. 23) to which Plaintiff has responded in opposition (Docket No. 34), and Defendant has replied (Docket No. 37). For the following reasons, the Motion for Summary Judgment will be granted with respect to Plaintiff's libel claim, but denied with respect to the TCPA claim.

## I. FACTUAL BACKGROUND

In moving for summary judgment, Defendant sets forth the following as the relevant

1

undisputed facts:

>    1. Plaintiff has a mortgage on certain real property located at 3411-3413 S. Mendenhall Rd., Memphis, Tennessee 38115 (the "Property").
>
>    2. Homeward services Plaintiff's mortgage for the Property.
>
>    3. On April 29, 2010, i.e., twenty-eight (28) days after it was due, Plaintiff's wife orally authorized Homeward to debit Plaintiff's bank account for the April 2010 mortgage payment via the Western Union telephone payment system.
>
>    4. On May 7, 2010, Homeward informed Plaintiff in writing that there had been an error with his April 2010 payment.
>
>    5. Plaintiff resubmitted his April 2010 payment on May 21, 2010.
>
>    6. Plaintiff has alleged, among other things, a state-law claim of libel against Homeward on the basis that it furnished false information about Plaintiff's April 2010 mortgage payment to consumer reporting agencies.
>
>    7. Homeward conducted an investigation into Plaintiff's inquiries about the 30-day late report with respect to the April 2010 mortgage payment.
>
>    8. Homeward determined that it was unable to remove the derogatory credit reporting for the month of April 2010.
>
>    9. Plaintiff habitually made late payments on his mortgage with Homeward and routinely incurred late charges.

(Docket No. 25 at 1-3, citations to the record omitted).

In response to the foregoing statement of facts, Plaintiff only challenges two things. First, he objects to the repeated references to Homeward, claiming that all of his dealings were with AHMSI, and the events about which he complains were taken by that entity, not Homeward. This "dispute" does not present a material issue of fact because, and as the record reflects, AHMSI changed it name to Homeward Residential, Inc., effective May 29, 2012. (Docket No. 19).

Second, Plaintiff disputes that he "habitually made late payments on his mortgage." Instead, he claims he "did not make payments which exceeded thirty days from the date on [his] loan[.]"

2

(Docket No. 35 at 3).

Apart from those two challenges, Plaintiff has submitted the following additional facts which he contends are material to resolution of Defendant's Motion for Summary Judgment:

1. That Stuart Clamp is a loan officer with Fifth Third Bank who is knowledgeable of Dennis Lindley's account, credit history and loan history.

2. That Dennis Lindley would have been approved for a mortgage rate of 5.625% on a 30-yr. JUMBO loan and 4.875% on a 15-year JUMBO loan if the 30-day late payment had not been on his credit report as reported by American Home Mortgage Servicing, Inc. for the month of April, 2010.

3. That Dennis Lindley contacted Stuart Clamp at Fifth Third Bank in May, 2010 to refinance his existing mortgage which was at a rate of 6.875%.

4. That the late payment reported by AHMSI made Dennis Lindley ineligible to refinance with Fifth Third.

(Docket No. 31 at 1-2).

Defendant's only objection to those additional facts is Plaintiff's reliance upon the Declaration of Stuart Clamp ("Mr. Clamp") to support the propositions that Plaintiff would have been approved for certain loans at given percentage rates, and that Plaintiff would have been eligible to refinance with Fifth Third Bank, were it not for the late payment report by Defendant. This objection is based on Plaintiff's failure to disclose Mr. Clamp as an expert witness. (Docket No. 38 at 2 & 3).

Against this backdrop, the Court considers Defendant's Motion for Summary Judgment.

## II. STANDARD OF REVIEW

A party may obtain summary judgment if the evidence establishes there are not any genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000).

3

The moving party bears the initial burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact that is disputed. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Covington, 205 F.3d at 914 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). If so, summary judgment is inappropriate.

### III. APPLICATION OF LAW

**A. Plaintiff's Libel Claim**

In moving for summary judgment on Plaintiff's libel claim, Defendant argues that the same is preempted by the Fair Credit Reporting Act ("the FCRA"), 15 U.S.C. §§ 1681-1681x. Plaintiff argues this defense has been waived because it was not pled in Defendant's Answer.

Federal preemption is an affirmative defense, Brown Earthboard Sports USA, Inc., 481 F.3d 901, 913 (6th Cir. 2007), and Rule 8(c) of the Federal Rules of Civil Procedure requires that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c). It is well established, however, that failure to raise an affirmative defense by responsive pleading does not always result in waiver." Moore, Owen, Thomas & Co. v. Coffey, 992 F.2d 1439, 1445 (6th Cir. 1993). This is because "[t]he purpose of Rule 8(c) is to give the opposing party notice of the affirmative defense and a chance to rebut it." Id. Therefore, "[a] defendant does not waive an affirmative defense if the defense is raised at a time when plaintiff's ability to respond is not prejudiced,"and even raising it in a motion for summary may not be too late. R.H. Cochran & Assoc, Inc. v. Sheet Metal Workers Intern. Ass'n Local Union No. 33, 335 Fed. App'x 516, 519 (6th Cir. 2009).

Here, Defendant raised and argued the merits of its FCRA preemption defense in both its

4

summary judgment motion and accompanying brief. Plaintiff certainly was placed on notice of the defense in enough time to address its merits, and, did so, arguing in his response brief that "[e]ven if it were not waived, however, the movant's argument likewise fails because it has failed to support its argument with competent evidence." (Docket No. 34 at 2). Since Plaintiff had the opportunity to respond, the Court finds that Plaintiff has not been prejudiced by the assertion of the preemption defense in Defendant's Motion for Summary Judgment. See, Huss v. King Co., Inc., 338 F.3d 647, 652 (6th Cir. 2003). ("If a plaintiff receives notice of an affirmative defense by some means other than pleadings, the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice.").

Turning to the merits, "the basic principles for successfully asserting federal preemption as an affirmative defense on summary judgment are sufficiently clear: it is first incumbent on the party moving for summary judgment to demonstrate that federal preemption potentially applies to the facts and circumstances of the suit, and, if so, the movants must adduce sufficient evidence, interpreted in a light most favorable to the non-moving party, to prove that there is no genuine issue of material fact contradicting the claim that the case at bar actually and unquestionably qualifies for federal preemption." Brown, 481 F.3d at 913. Defendant has met its burden of establishing federal preemption based upon the FCRA in this case.

"The FCRA was enacted 'to promote efficiency in the Nation's banking system and to protect consumer privacy.'" Briley v. Burns Int'l, 78 Fed. App'x 481, 483 (6th Cir. 2003) (quoting, TRW Inc. v. Andrews, 534 U.S. 19, 23 (2001)). "The FCRA creates a uniform set of rules governing the content of consumer reports and the responsibilities of those who maintain them," and, "[t]ogether with the Fair Debt Collection Practices Act, the FCRA is the source of most consumer credit rights

5

in the United States." Consumer Data Indus. Ass'n, 678 F.3d 898, 900 (9th Cir. 2012).

Given that "[t]he FCRA is a comprehensive statutory scheme designed to regulate the consumer reporting industry," Ross v. F.D.I.C.. 625 F.3d 808, 812 (4th Cir. 2010), it contains preemption provisions. "[T]he original preemption provision, 15 U.S.C. § 1681t(a), preempted state laws only 'to the extent that those laws are inconsistent with any provision of [the FCRA].'" Id. at 812-13 (citation omitted). Also part of the original legislation was Section 1681h(e) which, so far as relevant, provides:

> [N]o consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against . . . any person who furnishes information to a consumer reporting agency, . . . except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e). The plain language of this provision bars claims for defamation, absent a showing of malice or willful intent. Id.; Macpherson v. JPMorgan Chase Bank, N.A., 655 F,3d 45, 47-48 (2nd Cir. 2011).

Libel is a species of defamation, Quality Auto Parts Co., Inc. v. Bluff City Buick Co., 876 S.W.2d 818, 820 (Tenn. 1994), and, therefore, to prevail on his libel claim in light of the preemption provisions of the FCRA, Plaintiff must show that Defendant either acted with malice or with a willful intent to injure when it reported to credit bureaus that Plaintiff had made a late payment in April 2010. Plaintiff has failed to do so, and the summary judgment record establishes otherwise.

In moving for summary judgment, Defendant asserts that it investigated Plaintiff's claim, and points to an August 13, 2010 letter from Michael Salinas, a Research Supervisor for AHMSI informing Plaintiff that AHMSI would not be able to remove the derogatory credit report for the month of April 2010. (Docket No. 26-3). Further, in its statement of facts, Defendant claims that

6

it "conducted an investigation into Plaintiff's inquiries about the 30-day late report with respect to the April 2010 mortgage payment," and that it "determined that it was unable to remove the derogatory credit reporting for the month of April 2010." (Docket No. 25 at 2). In response, Plaintiff does not challenge the accuracy of the contention that an investigation was undertaken, and, as such, these factual assertions are accepted as true. L.R. 56.01 (c) & (g). Accordingly, summary judgement will be granted on Plaintiff's libel claim.

## B. Plaintiff's TCPA Claim

Defendant moves for summary judgment on Plaintiff's TCPA claim, arguing Plaintiff cannot establish damages.

Section 47–18–104(b) of the TCPA "provides a lengthy, non-exclusive list of practices that are 'unfair or deceptive' under the TCPA," and "Section 47–18–109(a)(1) creates a cause of action for those who suffer damages as the result of practices in violation of section 47–18–104." Morrison v. Allen, 338 S.W.3d 417, 439 (Tenn. 2011). Section 47-18-109(a)(1) provides:

> Any person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part, may bring an action individually to recover actual damages.

Tenn. Code Ann. § 47-18-109(a)(1).

"While the TCPA does not define 'ascertainable loss,'" the Tennessee Supreme Court, in a case of first impression, recently concluded that section 47-18-109(a)(1) "does not preclude actions by consumers premised on loss of consumer credit." Discover Bank v. Morgan, 363 F.3d 479, 496 (Tenn. 2012). In determining that "ascertainable loss" includes a loss of available credit, the court in Morgan, also "discern[ed] three criteria necessary for recovery": "First, a plaintiff must have

7

suffered a demonstrable loss of credit"; "[s]econd, the defendant must have proximately caused the loss of credit"; and "[t]hird, the loss of credit must have caused actual harm to the aggrieved party, such as lost profits or added costs." Id. at 497.

Plaintiff has forwarded sufficient evidence to survive summary judgment with respect to each of those criteria. He claims that, in May 2010, he sought to refinance property which had an interest rate of 6.875%, and that, but for the bad report of the single late payment, he would have been able to refinance with Fifth Third Bank at a 30 year rate of 5.625%, or a 15 year rate of 4.875%. These assertions are supported by Plaintiff's declaration and the declaration of Mr. Clamp, the Fifth Third Bank loan officer who was involved in Plaintiff's request for refinancing. These assertions show a demonstratable loss of credit caused by Defendant which caused actual harm to Plaintiff.

In arriving at this conclusion, the Court has considered Defendant's argument that neither Plaintiff nor Mr. Clamp can provide competent evidence on the issue of damages.

With respect to Plaintiff, Defendant argues that his testimony constitutes hearsay and is based on speculation. Although what Mr. Clamp told Plaintiff about the reason for denial of his request for refinancing would be hearsay, Mr. Clamp can testify to the reason. Further, while Plaintiff's assertion of the savings he would have received over the life of the loan may have some uncertainty to it, such testimony is not entirely speculative because, if believed, it shows Plaintiff was, in fact, damaged.

While "[t]he existence of damages cannot be uncertain, speculative, or remote," . . . "[t]he amount of damages may be uncertain, however, if the plaintiff lays a sufficient foundation to allow the trier of fact to make a fair and reasonable assessment of damages." Morgan, 363 S.W.3d at 496. In a loss of credit case, "plaintiffs fail to recover when they proffer little or no evidence that the loss

8

of credit caused by the defendant led to a subsequent, concrete injury," but "[p]laintiffs may recover for loss of credit when they can demonstrate how the credit they lost would have resulted in specific profits or savings." Id. at 498 (citing, Erdman v. White, 411 N.E.2d 653, 659 (Ind. App. 1980) (plaintiff "testified as to the importance of having a large line of credit available in order to purchase airplanes that suddenly became available"); Tempo, Inc. v. Rapid Elec. Sales & Serv., Inc., 347 N.W.2d 728, 733 (1984) (damages arose from withdrawn credit line that resulted in additional interest); and EMC Mortg. v. Jones, 252 S.W.3d 857, 873 (Tex. App. 2008) (defendant's reporting foreclosure on credit report resulted in plaintiff having to pay higher interest)). Plaintiff will be afforded the opportunity to present his evidence as to the amount of damages, and any deficiencies will undoubtedly be the subject of extensive cross-examination.

Defendant also argues Mr. Clamp is not competent because he will be called upon to testify as an expert, but has not been disclosed as required by Rule 26 of the Federal Rules of Civil Procedure. In support, Defendant cites the following from Advisory Committee Notes to Rule 702 of the Federal Rules of Evidence: "Within the scope of the rule are not only experts in the strictest sense of the word, e.g., physicians, physicists, and architects, but also the large group sometimes called 'skilled' witnesses, such as bankers . . ." (Docket No. 37 at 5 n.28). This is a misleading use of ellipses because the Advisory Committee Note speaks about "bankers or landowners testifying to land values." Fed. R. Evid. 702 Advisory Committee's note.

Here, of course, Mr. Clamp will not be called to testify as to land values, but rather as to whether Plaintiff would have been allowed to refinance at certain rates but for the bad report issued to the credit bureaus by Defendant. This is properly the subject of lay opinion testimony under Rule 701 of the Federal Rules of Evidence which allows for testimony in the form of an opinion that is

9

"(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. See, United States v. Munoz-Franco, 487 F.3d 25, 36 (2nd Cir. 2007) (loan officer could testify as to how loans were classified, whether loan were expected to receive favorable treatment, and propriety of construction loans based upon first-hand observations of bank's practices); United States v. Kelley, 615 F.2d 378, 380 (11th Cir. 1980) (Rule 701 authorized bankers to testify as bank's loan policies); United States v. Whaley, 2012 WL 5463300 at *1 (E.D. Tenn. Nov. 8, 2012) (testimony was governed by Rule 701 and not 702 where witnesses testified "to the facts surrounding their investigation of the approval of the loans at issue and to their lay opinion, resulting from their investigation and their knowledge of their employers' lending policies, as to whether their employer banks would have approved the loans if the true nature of the down payments had been known") .

Finally, Defendant argues Plaintiff was not damaged by the bad credit report because his "credit was not excellent even before Homeward reported his April 2010 late payment," as evidenced by that fact that he had relatively low credit scores already, numerous delinquencies on his accounts, ten other mortgages, balances on several credit cards, and a record of habitually making late payments. These allegations are not facts properly before the Court because they were not set forth in Defendant's concise statement of facts as required by Local Rule 56.01(b).

Regardless, Mr. Clamp claims to have been familiar with Plaintiff's credit and loan history, yet pegs First Third Bank's refusal to refinance based on the single late payment reported by Defendant. Of course, if what Defendant says about Plaintiff's credit is true, Plaintiff may have an exceedingly tough row to hoe in convincing the jury that he was damaged by the bad credit report.

## IV. CONCLUSION

Based upon the foregoing, the Court will grant summary judgment in favor of Defendant on Plaintiff's libel claim, but deny summary judgment on Plaintiff's claim under the TPCA.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE

11

Case 3:10-cv-01108   Document 39   Filed 11/20/12   Page 11 of 11 PageID #: 324